# UNITED STATES DISTRICT COURT
## for the
### WESTERN DISTRICT OF WISCONSIN

FILED/REC'D
2025 OCT -9 A 11: 13
CLERK OF COURT
U.S. DISTRICT COURT
WD OF WI

TRENTON PATE SR.,

   Plaintiff/Petitioner,

vs.                                                        Case No. __25-cv-838-jdp__

ASPIRUS HOSPITAL, INC.

   Defendant/Respondent.

---

## COMPLAINT FOR DAMAGES UNDER THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT (EMTALA)

### I. JURISDICTION AND VENUE

1. This action arises under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred at Aspirus Wausau Hospital in this District.

### II. PARTIES

4. Plaintiff Trenton Pate, Sr. is a resident of Wisconsin.

5. Defendant Aspirus Hospital, Inc. is a healthcare facility operating an emergency department and is a participating hospital under the Medicare program, making it subject to EMTALA.

1

## III. FACTUAL BACKGROUND

6. On September 3, 2025, Plaintiff, a medically complex and immunosuppressed individual who uses a power wheelchair for mobility, presented to the Aspirus Wausau Hospital emergency department with flank pain, concern for a chest port infection, and requested a CT scan.

7. Defendant's staff initially dismissed Plaintiff's concerns. Plaintiff was forced to play an audio recording of his rheumatologist explaining his vasculitis and chronic inflammatory illness before his condition was acknowledged.

8. Defendant's own evaluation and laboratory results revealed critical, objective evidence of an unstable emergency medical condition, including:

    - Blood Pressure: 197/95 (hypertensive crisis).
    - White Blood Cell Count: 20.01 K/uL (normal 4.00–11.10).
    - Absolute Neutrophil Count: 17.40 K/uL (normal 1.85–7.60).
    - Erythrocyte Sedimentation Rate (ESR): 18 mm/Hr (normal 0–12).

9. Defendant's staff drew two sets of blood cultures to evaluate for sepsis or central line infection, demonstrating recognition of a potentially life-threatening condition.

10. Despite these findings, Defendant documented that Plaintiff was "hemodynamically stable," a statement contradicted by the hypertensive crisis reading of 197/95.

11. Initially, the emergency physician, Dr. Radke, informed Plaintiff that he would be admitted. After consultation with the on-call hospitalist, however, Dr. Radke reversed course, and Plaintiff was denied admission. The hospitalist stated there was "no indication to admit him inpatient."

12. When Plaintiff protested that this refusal violated EMTALA, staff documented him as a "difficult patient" and discharged him.

## A. Failure to Conduct Contemporaneous Imaging

13. Defendant refused to order updated CT imaging tailored to Plaintiff's September 3, 2025 presentation. Instead, Defendant selectively relied on a limited June 2025 CT that did not evaluate the chest port, vasculature, or Plaintiff's known chronic periaortitis.

14. Prior imaging from February and April 2024 had documented circumferential periaortic soft-tissue thickening consistent with periaortitis.

15. By disregarding those probative studies and declining updated imaging when Plaintiff presented with acute symptoms, Defendant denied him diagnostic information necessary for stabilization.

16. This refusal, combined with reliance on the least informative prior scan, rendered the screening perfunctory and the discharge medically unsafe.

## B. The Medically Reckless Discharge

17. At approximately 1:19 AM on September 4, 2025, Defendant administered IV Solu-Medrol, a steroid known to cause dangerous hyperglycemia in diabetics.

18. At approximately 1:45 AM, Defendant discharged Plaintiff, despite knowing he was diabetic, had just received a hyperglycemic agent, and did not have access to insulin.

19. Defendant also failed to ensure Plaintiff, a power wheelchair user, had safe transportation home in the middle of the night.

20. Plaintiff was stranded in the waiting room for nearly seven hours, during which he suffered a hyperglycemic crisis caused by the steroid and lack of insulin.

21. At 8:53 AM, Defendant's case manager documented Plaintiff remained in the waiting room, in severe distress, without insulin, and had a blood glucose of 307 mg/dL.

22. When Plaintiff sought help, Defendant's staff refused to provide care unless he re-registered through the emergency department, creating a barrier to treatment.

## IV. COUNT I – FAILURE TO PROVIDE AN APPROPRIATE MEDICAL SCREENING (42 U.S.C. § 1395dd(a))

23. Plaintiff incorporates by reference paragraphs 1–22.

24. EMTALA requires hospitals to provide an appropriate medical screening to determine whether an emergency medical condition exists.

25. Defendant failed to do so because:

    a. Staff dismissed Plaintiff's history until compelled to acknowledge it;

    b. Critical data was ignored or misrepresented;

    c. Non-medical factors, including labeling Plaintiff "difficult," were considered;

    d. Defendant refused contemporaneous imaging, relying instead on a limited prior scan and disregarding probative imaging documenting periaortitis.

26. A screening is not appropriate under EMTALA when it is cursory, perfunctory, or predictably fails to identify the emergency condition presented. See Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 272–73 (6th Cir. 1990); Repp v. Anadarko Mun. Hosp., 43 F.3d 519, 522–24 (10th Cir. 1994).

27. Defendant's conduct rendered its screening inappropriate and directly caused Plaintiff harm.

## V. COUNT II – FAILURE TO STABILIZE (42 U.S.C. § 1395dd(b))

28. Plaintiff incorporates by reference paragraphs 1–27.

4

29. EMTALA requires hospitals to stabilize a patient's emergency medical condition prior to discharge.

30. Defendant had actual knowledge of Plaintiff's emergency condition, as shown by his hypertensive crisis, abnormal labs, initial admission decision, and blood cultures drawn for sepsis.

31. Defendant failed to stabilize by:

    a. Discharging Plaintiff while medically unstable;

    b. Administering a steroid that predictably induced hyperglycemia without ensuring insulin access;

    c. Failing to provide safe transportation;

    d. Refusing to provide care when Plaintiff experienced a steroid-induced hyperglycemic crisis unless he re-registered.

32. EMTALA requires stabilizing treatment within the hospital's capacity before discharge. See Moses v. Providence Hosp., 561 F.3d 573, 583–86 (6th Cir. 2009). Motive is irrelevant. See Roberts v. Galen of Va., Inc., 525 U.S. 249, 253 (1999).

33. Defendant's unsafe discharge directly caused Plaintiff's injuries, as documented by Defendant's own records.

## VI. DAMAGES

34. As a result of Defendant's EMTALA violations, Plaintiff suffered:

    a. Medical expenses for follow-up care;

    b. Severe physical pain and suffering;

    c. Emotional distress;

    d. Additional financial costs.

35. EMTALA authorizes recovery of such damages. 42 U.S.C. § 1395dd(d)(2)(A).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

    a. Enter judgment in Plaintiff's favor and against Defendant;

    b. Award Plaintiff actual damages in an amount to be determined at trial;

    c. Award costs of this suit and any other relief allowed by law;

    d. Grant such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

I declare under penalty of perjury that everything that I have stated in this document is true and correct. *28 U.S.C. § 1746.*

Dated: __September 30, 2025__

Signature

__Marathon, Wisconsin__

County and State where signed

Name: __Trenton Pate Sr.__

Address: __PO Box 15__

City/State/Zip: __Wausau, WI 54402__

Telephone: __507-261-1101__

E-mail address: __no3trai@yahoo.com__

6